

# THE ATTORNEY GENERAL
## OF TEXAS

### AUSTIN 11, TEXAS

PRICE DANIEL
ATTORNEY GENERAL

February 24, 1950

Hon. John H. Winters
Executive Secretary
State Youth Development Council
Austin, Texas

Opinion No. V-1013

Re: Authority of the State Youth
Development Council in re-
spect to Treatment and Dis-
position of Delinquent Chil-
dren.

Dear Sir:

You have requested an opinion on questions involving the construction of House Bill 705, Acts 51st Leg., R.S. 1949, ch. 538, p. 988. This Act, codified as Article 5143c, V. C. S., creates a State Youth Development Council and defines its powers, duties, and functions in respect to juvenile delinquency. The Act, among other things, gives to the Council all rights, powers, and duties for the care of delinquent children in certain State Training Schools formerly held by the State Board of Control.

The questions presented by your request are, in substance, as follows:

(1) What is the authority of the State Youth Develop-
ment Council in regard to determination of treatment and
disposition of delinquent children committed to the Council
by Juvenile Courts after the effective date of Article 5143c,
V.C.S. ?

(2) What is the authority of the State Youth Develop-
ment Council in regard to determination of treatment and
disposition of delinquent children committed by Juvenile
Courts to the Gatesville, Gainesville, and Brady State

Training Schools prior to the effective date of Article 5143c, V. C. S. ?

Your questions arise from a reading of the Youth Development Council Act together with certain portions of Article 2338-1, V. C. S., (Acts 48th Leg., 1943, ch. 204, p. 313), which defines the powers, duties, and functions of juvenile courts. Section 5 of Article 2338-1, in part, provides:

"When jurisdiction shall have been obtained by the court in the case of any child, such child shall continue under the jurisdiction of the court until he becomes twenty-one (21) years of age, unless discharged prior thereto . . . ."

Section 14 of Article 2338-1 reads in part as follows:

"An order of commitment made by the court in the case of a child shall be subject to modification or revocation from time to time."

Thus Article 2338-1, V. C. S., gives to the juvenile court continuing jurisdiction over a child adjudged delinquent and empowers the juvenile court to modify or revoke any order made by it in respect to the child. There are doubtlessly many children now in State training schools who were committed thereto when Article 2338-1 was the only statute applicable to the subject of disposition of delinquent children in State training schools.

However, the 51st Legislature enacted the Youth Development Council Act, Article 5143c, V. C. S., portions of which are quoted below:

"Sec. 12. When any child is adjudged delinquent under provision of Section 13 of Chapter 204 of the General Laws of the Regular Session of the Forty-eighth Legislature, 1943 (Sec. 13, Article 2338-1, of Vernon's 1948 Statutes), and the Court does not release such child unconditionally, or place him on probation or in a suitable public or private institution or agency other than a

State Training School, the Court shall commit him to
the Council, but may suspend the execution of the order
of such commitment."

"Sec. 18. When a child has been committed to the
Council, it may:

"(a) Permit him his liberty under supervision and
upon such conditions as it believes conducive to accepta-
ble behavior; or

"(b) Order his confinement under such conditions
as it believes best designed for his welfare and the in-
terests of the public; or

"(c) Order reconfinement or renewed release as
often as conditions indicate to be desirable; or

"(d) Revoke or modify any order of the Council af-
fecting a child, except an order of final discharge, as
often as conditions indicate to be desirable; or

"(e) Discharge him from control when it is satis-
fied that such discharge will best serve his welfare and
the protection of the public."

Sections 1 and 44 of Article 5143c declare in substance
that the purpose of the Act and the function of the Council is the co-
ordination and improvement of facilities for the prevention and re-
habilitation of juvenile delinquency.

In view of the aforementioned sections of the Youth Develop-
ment Council Act, we believe that it was the intention of the legisla-
ture to give, in so far as it lawfully can, to the Youth Development
Council exclusive authority, as outlined in Section 18 of the Act, to
determine treatment and disposition of delinquent children and that
Article 2338-1 is amended by implication to the extent hereinafter
indicated.

Having concluded that the legislature intended to vest in
the Council as much authority as possible in respect to the powers

and functions enumerated in Section 18 of the Youth Development Council Act, we will consider your first question relating to the authority of the Council over children committed to the Youth Development Council after the passage of the Youth Development Council Act. The problem is whether the Legislature may lawfully vest in the Council the power in respect to this group of children to make the determinations enumerated in Section 18, including the power to grant final discharge from State control.

It has been suggested that such a statute violates the constitutional principle of separation of powers.[1] The validity of statutes authorizing administrative boards to grant parole and to transfer prisoners from one place of confinement to another has been sustained in numerous jurisdictions despite assertions that such statutes are repugnant to the constitutional principle of separation of powers.

Although proceedings involving juvenile delinquents in this State are civil rather than criminal in nature, the power to release under supervision granted to the Council by the Act is the same type of function as the power of parole. In Pennsylvania ex rel Banks v. Cain, 28 Atl. 2d 897 (Pa. Sup. 1942), the Pennsylvania Supreme Court upheld a statute authorizing parole by the Board of Pardons and Paroles where the prisoner was serving an indeterminate sentence. The Court said:

"..... The granting of parole and the supervision of parolees are purely administrative functions, and accordingly may be entrusted by the Legislature to nonjudicial agencies."

---

1. Article II, Constitution of Texas provides: "The powers of the Government of the State of Texas shall be divided into three distinct departments, each of which shall be confided to a separate body of magestry, to wit: Those which are Legislative to one; those which are Executive to another, and those which are Judicial to another; and no person, or collection of persons, being of one of these departments, shall exercise any power properly attached to either of the others, except in the instances herein expressly permitted."

Likewise, it has been held in other jurisdictions that there is no infringement of the functions of the judiciary where a state confers powers upon an administrative body to establish a system of parole and also to grant an absolute discharge to a parolee after he has served the minimum term provided for the crime for which he was convicted. Miller v. State, 49 N. E. 894 (Ind. Sup. 1898); People v. Madden, 105 N. Y. S. 554 (App. Div. 1907); State v. Page, 57 Pac. 514 (Kan Sup. 1899); and annotations in 143 A. L. R. 1498. Accord, Hatton v. Board of Control, 146 Tex. 160, 204 S. W. 2d 390 (1947) holding that the superintendent of a State hospital for the insane has authority to dismiss a patient who has been committed thereto upon a charge of lunacy and that such patient cannot again be committed to the asylum until he has again been tried in another lunacy proceeding and adjudged insane and in need of restraint.

The theory upon which the courts have proceeded in upholding the authority of administrative boards to grant absolute discharge to prisoners who have been sentenced for an indeterminate term is that the exercise of the power to discharge does not interfere with the sentence because the statute authorizing the discharge is impliedly annexed to the sentence. Glazier v. Reed, 163 Atl. 766 (Conn. Sup. Ct. of Errors 1933); In Re Sheehan, 150 N. E. 231 (Mass. Sup. Jud. Ct., 1926).

Applying the reasoning of the above cited cases to the Act under consideration, it is our opinion that authority may be lawfully given to the Council to confine, release under supervision, reconfine, or discharge from control, delinquent children committed to it subsequent to the effective date of the Act, without violating the principle of separation of powers found in Article II, Constitution of Texas. Moreover, Acts almost identical with the one under consideration have been upheld in other jurisdictions. In Re Herrera, 143 P. 2d 345 (Cal. Sup. 1943); State v. Meyer, 37 N. W. 2d 3 (Minn. Sup. 1949).

Accordingly, you are advised in answer to your first question that the Council has exclusive authority to determine treatment and disposition of delinquent children committed to it by Juvenile Courts after the effective date of the Act. This includes the exclusive authority to grant final and complete

discharge from State control.[2]

Your second question relates to the authority of the Council in respect to children presently confined in the Gainesville, Gatesville, and Brady State Training Schools as a result of a commitment thereto before the Youth Development Council Act.

Section 29 of the Act reads in part as follows:

"The Council may release under supervision at any time, and may place children in its custody in their usual homes or in any situation or family that it has approved . . . ."

Custody of delinquent children presently committed to one of the State Training Schools has been given to the Council by Section 8 of the Act. We believe that Sections 8 and 29 are sufficient legislative authority for the Council to release under supervision children committed to one of the three schools prior to the effective date of the Act.

As heretofore observed, release under supervision or parole is an administrative rather than a judicial function, and statutes authorizing administrative bodies to grant parole are not repugnant to the separation of powers principle. Neither is it an infringement upon judicial power or an interference with a judicial order for the Council to release under supervision children in its

---

2. In connection with the grant of final and complete discharge from State control, attention is called to Section 17(d), providing that: "Failure of the Council to examine a child committed to it, or to re-examine him within one (1) year of a previous examination, shall not of itself entitle the child to discharge from the control of the Council, but shall entitle hin to petition the committing Court for an order of discharge, and the Court shall discharge him unless the Council upon due notice satisfies the Court of the necessity for further control," and to Section 33, providing: "Every child committed to the Council as delinquent, if not already discharged, shall be discharged or referred back to the Court when he reaches his twenty-first birthday."

custody who were committed to State Training Schools prior to the enactment of the Youth Development Council Act. This is true because the release under supervision does not interfere with the order of commitment. Release under supervision relates to the manner of executing the sentence and not to the duration of the sentence. In this connection, the court, in Pennyslvania ex rel Banks v. Cain, supra, said:

"The exercise of the power of parole being but an administrative function which does not impinge upon the judicial power of sentencing the accused in conformity with the law, it follows that the present act may constitutionally be applied to cases where sentences were im- posed before its effective date. The sentence is in no wise interfered with, especially since the act provides that a parole cannot be granted until the expiration of the minimum term prescribed by the court. The parolee is not discharged, but merely serves the remainder of his sentence by having his liberty restrained in a manner analogous to that employed in the 'trusty' or 'honor' system of prison discipline." (Emphasis added)

Although it is not an interference with a judicial order for the Council to release under supervision children committed to a State Training School prior to the effective date of the Act, it would, however, be an unlawful interference with a judicial order for the Council to attempt to discharge from all State control any of the children who were committed prior to the Act. These children were committed pursuant to Article 2338-1, V. C. S., which expressly gave to the juvenile court continuing jurisdiction. Consequently, the judicial orders committing these children either expressly or impliedly were subject to modification or revocation at the discretion of the committing courts. We do not believe that the Legislature in enacting the Youth Development Council Act attempted to give to the Council authority to modify or revoke any previously made order of a juvenile court and to thus infringe upon the Court's judicial power.

You are therefore advised in answer to your second question that the Council has authority to determine treatment and disposition of children in its custody as a result of commitments to State Training Schools before the Act, but this authority does

not include the power to grant final discharge from State control.

It is to be noted that many sections of the Act use the phrase "committed to the Council" in stating the powers and duties of the Council whereas Section 29 supra, does not. We do not mean to infer, in relying on Section 29 for the Council's authority over children committed prior to the Act, that the Legislature created two distinct classes of delinquent children and that a different system of treatment and disposition would be given each class according to the date of the child's commitment. On the contrary, we believe it was the intention of the Legislature that all delinquent children committed to the State, both past and future, would be accorded the same system of treatment while undergoing rehabilitation in the State's custody. Such would have to be done to comply with the purpose of the Act as expressed in Section 1.

"The purpose of this Act is to develop our State's most precious resource, its children and youth, by creating a Youth Development Council, first, to co-ordinate the State's departments and facilities in helping all communities, develop and strengthen all child service, preventing delinquency and other types of social maladjustment by developing in all children the spiritual, mental, and physical resources necessary for complete citizenship responsibility and participation; and, secondly, to administer the State's correctional facilities by providing a program of constructive training aimed at the rehabilitation and successful re-establishment in society of delinquent children." (Emphasis added)

These are our general impressions given without the benefit of any specific fact situation. Doubtless there will be many situations which will arise and which will be determined in the light of the circumstances then existing.

## SUMMARY

The Youth Development Council has exclusive authority to determine treatment and disposition, as outlined in Section 18 of the Youth Development Council Act, of delinquent children committed to it by Juvenile Courts after the effective date of the Act, including authority to

grant final and complete discharge from State control.
(Art. 5143c, V. C. S.)

The Council has authority to determine treatment
and disposition, as specified in Section 29 of the Act,
of delinquent children committed to the Gatesville,
Gainesville, and Brady State Training Schools prior to
the effective date of the Act, except the authority to
grant final and complete discharge from State control.
(Art. 5143c, V. C. S., and Art. 2338-1, V. C. S.)

Yours very truly,

PRICE DANIEL
Attorney General

APPROVED

Charles D. Mathews
Executive Assistant

By

Joe R. Greenhill
First Assistant

Walter F. Woodul, Jr.
Assistant

PTP:WFW:f